The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as facts and concludes as matters of law the following, which were agreed upon by the parties at the hearing, in a Pre-trial Agreement dated 29 October 1994, and in a letter dated 24 January 1995 as
STIPULATIONS
1. At all times relevant to this claim the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 24 April 1993 an employment relationship existed between plaintiff and defendant-employer.
3. On 24 April 1993 Harleysville Insurance Company was the compensation carrier on the risk.
4. The date of loss shall be considered for purposes of this proceeding to be 24 April 1993. On the date of loss, the average weekly wage of plaintiff was $384.62.
5. Plaintiff has not worked for defendant-employer from or after 13 April 1994.
6. Plaintiff began losing time from work with defendant-employer on 17 May 1993 and returned to work with defendant-employer on 30 June 1993. Defendant-employer paid plaintiff $150.00 per week until he returned to work on 30 June 1993. Plaintiff began losing time from work again on 26 July 1993 and did not return to work with defendant-employer until 1 September 1993.
7. A three page document showing vacation, sick leave, loans, payments, balances and comments, collectively marked as Stipulated Document 1, is stipulated into evidence.
8. A thirty-one page composite of medical records is stipulated into evidence.
***********
The Full Commission rejects the findings of fact of the deputy commissioner and finds as follows
FINDINGS OF FACT
1. Plaintiff began working for defendant-employer in 1988. In April 1994 plaintiff was employed by defendant-employer as a cabinet installer.
2. Plaintiff had a prior medical history of intermittent low back pain. In April of 1991 plaintiff visited his family physician complaining of low back pain after performing heavy lifting at work. Plaintiff was diagnosed with ligamentous back strain, and was treated conservatively with bed rest and medication. Plaintiff first visited Dr. Bruce W. Burchette, a family practitioner, in August 1992 complaining of low back pain after a fall at work. Because plaintiff had no neurologic deficits at that time Dr. Burchette diagnosed mechanical low back strain, probably musculoskeletal in nature, and treated plaintiff conservatively. In March 1993 plaintiff visited Dr. Burchette complaining of low back pain radiating into both legs after a lifting incident at work. Testing revealed a positive straight leg raise on the right side but no other neurologic deficits. Dr. Burchette diagnosed mechanical low back strain with the possibility of sciatic nerve irritation. However, because a positive straight leg raise is sometimes indicative of sciatic nerve irritation, and because plaintiff's neurologic exam was otherwise non-focal, Dr. Burchette chose to treat plaintiff conservatively. None of plaintiff's prior injuries at work were reported by plaintiff as workers' compensation injuries.
3. On Saturday, 24 April 1993 plaintiff and his co-worker Charles Pearman were scheduled to work one-half day at a house under construction in Greensboro that had not been wired for electrical power. Plaintiff was assigned to install cabinets on the second level of the home and therefore had to run drop cords from outside of the house up the stairs to the second level of the house so that he would have electrical power. After he finished installing the cabinets, plaintiff began to remove the drop cords from the second level. As he neared the top of the stairway leading to the first floor, plaintiff stepped on the edge of the cord causing it to roll out from under his foot. Plaintiff fell down onto his tailbone and bounced down several steps. He immediately felt pain in his back which radiated into his right leg.
4. Charles Pearman testified that he was working in the kitchen when he heard plaintiff "holler", and immediately went to investigate. He found plaintiff sitting on a step in the stairway approximately two steps from the top. Mr. Pearman asked plaintiff if he needed assistance and plaintiff told him that he was all right, but that he wanted to remain sitting on the step for a few minutes to compose himself. Shortly thereafter Mr. Pearman and plaintiff collected their tools and left the jobsite.
5. Once at home plaintiff told his wife that he had fallen in the stairway at work and that he was having quite a bit of pain in his back and leg. He did not seek medical treatment during the rest of that weekend.
6. The following Monday plaintiff reported to work as scheduled and told Phillip Burger, president of defendant-employer, that he fell at work on 24 April 1993 and that he wanted to see a doctor. Mr. Burger noticed that plaintiff appeared to be in pain but asked plaintiff if he could work anyway, because he needed plaintiff to go to Winston-Salem that day. Plaintiff told Mr. Burger that he would work that day, and he continued to work that entire week even though he was experiencing constant back and leg pain.
7. Plaintiff did not seek medical attention for his back and leg pain until 4 May 1993 when he visited Dr. Burchette. After an examination Dr. Burchette ordered an MRI of plaintiff's back. The MRI report showed that plaintiff had a herniated disc at the L5-S1 space with some displacement of the right S1 nerve root. Dr. Burchette thereafter referred plaintiff to Dr. Stephen C. Robinson, a neurosurgeon.
8. Plaintiff's first visit with Dr. Robinson was on 14 May 1993. Plaintiff told Dr. Robinson that he had low back pain for an approximately eight to ten year period, and that he had recently developed severe back pain radiating into his right leg upon arising out of bed two weeks prior to this visit. Plaintiff did not tell Dr. Robinson that his present pain symptoms began after the 24 April 1993 injury at work until several weeks after this 14 May 1993 visit. Dr. Robinson's examination and radiologic studies revealed degenerative disc disease at the L4-L5 and L5-S1 levels, and a herniated disc on the right at L5-S1 compressing the S1 nerve root, and he recommended that plaintiff undergo surgery. Plaintiff accepted Dr. Robinson's recommendation and he performed a mirco-discectomy on plaintiff on 21 May 1993.
9. Plaintiff remained out of work from 21 May 1993 until 29 June 1993 due to his surgery. Plaintiff returned to work for defendant-employer on 30 June 1993 and continued to work until 25 July 1993, when he was advised by Dr. Robinson to stop working until 1 September 1993 in order to fully allow his back to heal. Thereafter, plaintiff returned to work for defendant-employer making the same or similar wages until he was terminated from his employment with defendant-employer on 12 April 1994 for reasons unrelated to his 24 April 1993 injury by accident.
10. Dr. Robinson followed plaintiff's recovery until 21 September 1994. At that time he released plaintiff from his care to return as needed, and assigned plaintiff a fifteen percent (15%) permanent partial impairment rating to his back.
11. Plaintiff had no prior medical history of a herniated disc before 24 April 1993 but did have pre-existing degenerative disc disease which was non-disabling. Both Dr. Burchette and Dr. Robinson opined that a fall can cause exacerbation of a pre-existing degenerative disc disease condition. Dr. Robinson testified that the surgery he performed on plaintiff was to correct the herniated disc at the L5-S1 level.
12. On 24 April 1993 plaintiff sustained an injury by accident due to a fall arising out of and in the course of his employment. As a result of said fall plaintiff aggravated his pre-existing degenerative disc disease and herniated a disc at the L5-S2 level which required surgery.
13. As a result of his work injury of 24 April 1993 plaintiff was temporarily totally disabled from 21 May 1993 through 29 June 1993, and from 26 July 1993 through 31 August 1993.
14. As a result of his 24 April 1993 injury and resulting surgery, plaintiff has retained a fifteen (15%) permanent partial impairment to his back.
15. Defendant-employer gave plaintiff $150.00 per week for four weeks for the period from 21 May 1993 until 30 June 1993. This money was given to plaintiff by defendant-employer as a gift to help him through his recovery period.
16. On 13 July 1993 defendant-employer filed a Form 19, Employer's Report of Injury to Employee, showing a date of injury of 24 April 1993.
17. Plaintiff's average weekly wage of $384.62 yields a compensation rate of $256.43.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. On 24 April 1993 plaintiff sustained in injury by accident arising out of and in the course of his employment with defendant-employer as a direct result of the specific traumatic incident of the work assigned. As a result of this injury by accident, plaintiff's pre-existing degenerative disc disease was materially aggravated and he sustained a herniated disc which required surgery, and ultimately resulted in a fifteen percent (15%) permanent partial impairment to his back. N.C. Gen. Stat. §§ 97-2 (6); 97-31 (23).
2. Plaintiff is entitled to payment by defendants of temporary total disability compensation at the rate of $256.43 per week for the following periods that he was unable to work: 21 May 1993 through 29 June 1993; and 26 July 1993 through 31 August 1993. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment by defendants of permanent partial disability compensation at the rate of $256.43 per week for forty-five weeks for the fifteen percent (15%) permanent partial impairment to his back. N.C. Gen. Stat. § 97-31 (23).
4. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of his compensable injury of 24 April 1993 for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief and/or will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
5. Defendants are not entitled to a credit for the $150.00 per week that plaintiff received for four weeks in May and June of 1993 as a gift from defendant-employer. This money was not a voluntary workers' compensation payment and appears to be a private matter between plaintiff and defendant-employer. N.C. Gen. Stat. § 97-42.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to an attorney's fee hereinafter approved, defendants shall pay to plaintiff temporary total disability compensation benefits at the rate of $256.43 per week for the periods from 21 May 1993 through 29 June 1993, and from 26 July 1993 through 31 August 1993. As said amount has accrued, payment shall be made in a lump sum, uncommuted.
2. Subject to an attorney's fee hereinafter approved, defendants shall pay to plaintiff permanent partial impairment compensation benefits at the rate of $256.43 per week for forty-five weeks due to the fifteen percent permanent partial impairment to plaintiff's back. As said amount has accrued, payment shall be made in a lump sum, uncommuted.
3. Defendants shall pay all medical expenses incurred or to be incurred as a result of his compensable injury by accident of 24 April 1993 when bills for same have been submitted and approved through procedures adopted by the Industrial Commission.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the accrued compensation awarded herein to plaintiff is hereby approved for plaintiff's counsel and shall be deducted from the above award and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due this Commission.
 S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ COY M. VANCE COMMISSIONER
BSB:be